[Cite as *Oregon Place Assn. v. Walsh-Cotton*, 2013-Ohio-5461.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| OREGON PLACE ASSOCIATION | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 25667 |
| and | : | T.C.NO. 12CV6100/12CV6111 |
| MARGARET WALSH-COTTON | : | (Civil appeal from Common Pleas Court) |
| Plaintiff-Appellant | : | |
| v. | : | |
| CITY OF DAYTON BOARD OF ZONING APPEALS | : | |
| | : | |
| Defendant-Appellee | : | |
| | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___13th___ day of ___December___, 2013.

. . . . . . . . . .

PAMELA L. PINCHOT, Atty. Reg. No. 0071648, 1800 Lyons Road, Dayton, Ohio 45458
    Attorney for Plaintiff-Appellant

JOHN C. MUSTO, Atty. Reg. No. 0071512, Assistant City Attorney, 101 W. Third Street, Dayton, Ohio 45401
    Attorney for Defendant-Appellee

JONATHAN F. HUNG, Atty. Reg. No. 0082434, 800 Performance Place, 109 N. Main Street, Dayton, Ohio 45402

      Attorney for Plaintiff-Appellee

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    This matter is before the Court on the Notice of Appeal of Margaret Walsh-Cotton, filed March 6, 2013. Walsh-Cotton appeals from the February 4, 2013 decision of the trial court that affirmed the City of Dayton Board of Zoning Appeals ("BZA") July 23, 2013 decision; the BZA affirmed the decision of the Zoning Administrator that denied Walsh-Cotton's application to establish a home massage studio in an accessory structure at 116 Brown Street, where she resides. We hereby affirm the decision of the trial court.

{¶ 2}    Walsh-Cotton, a licensed massage therapist, purchased the Brown Street property on April 27, 2012, having previously operated a massage studio at her former residence for 13 years. The City Zoning Code provides that accessory buildings are not permitted to be used for home occupations, and it sets forth a minimum side setback of three feet. Walsh-Cotton sought to establish her massage studio by enlarging an existing 120 square foot accessory building on the property by adding 88.5 square feet, which would result in the proposed building being located less than three feet from the side property line. Her application was denied on June 11, 2012, and Walsh-Cotton appealed the Zoning Administrator's decision on June 18, 2012, to the BZA.

{¶ 3}    A hearing was held on July 10, 2012 before the BZA. On July 23, 2012, the BZA issued a written decision granting the area variance but denying the use variance. Walsh-Cotton appealed the decision of the BZA to the court of common pleas. Regarding

the use variance, Walsh-Cotton asserted that the hearing transcript demonstrates that a motion was made to disapprove the use variance, and that the board members voted three to one to deny the motion. She asserted that the BZA made an illegal decision by denying her the use variance after voting against its disapproval. The trial court determined as follows:

At the hearing, Peter Bracher, member, upon motion, moved to determine that "there **was not** a preponderance of reliable, probative and substantial evidence to make the specified findings required under R.C.G.O. § 150.120.10(D)(2), and **deny** the application for the [use variance]." (emphasis added). The motion was seconded by Diane Graham, member. A poll was then taken of the board and resulted in the following: Larry Ison, secretary, voted "no", Ms. Graham voted "yes", Mr. Bracher voted "no" and Anthony Ciani, member, voted "no". Mr. Ciani then concluded that the use variance was denied by a 3-1 vote.

Although the board "technically" voted 3-1 against the proffered motion and in so doing literally inferred, via their vote, that there was a preponderance of reliable, probative and substantial evidence to make a finding required under R.C.G.O. § 150.120.10(D)(2), this was clearly contrary to the board members' intent. As stated by Mr. Ciani's conclusion, it was agreed upon by the board members that the use variance was denied.

Moreover, the BZA followed all the necessary procedures set forth in R.C.G.O. § 150.120.7. The BZA issued a written decision on July 23, 2012 within 30 days of the hearing held on July 10, 2012. The BZA denied Ms.

Cotton's application for a use variance. Lastly, the BZA had a concurring vote of the majority of the members to deny the use variance.

**{¶ 4}** Walsh-Cotton further asserted that the hearing for her application for a use variance was not properly advertised, such that the decision of the BZA is illegal. The trial court determined as follows:

> Ms. Cotton's primary contention is that the notice failed to indicate the subject matter of the hearing in that the notice indicated a hearing on the set-back variance request, but failed to mention a hearing on the request for a use variance. However, the notice provided in relevant part: "a variance application to **use accessory buildings for home occupation** and **reduction in required side setback** at 116 Brown Street . . . Proposed Use: Home Occupation (Massage therapist). Establish a massage studio in an existing 120 square foot accessory building. Proposed to add 88.5 square feet to the existing accessory building . . ." (emphasis added).

> Thus, the notice provided all the requirements as set forth in R.C.G.O. §150.120.4 including but not limited to the time, place, date and subject matter of the hearing including both the set-back variance and the request for use variance.

**{¶ 5}** Walsh-Cotton further asserted to the trial court that the BZA's decision is illegal because the board used the wrong standard of proof, namely the clear and convincing evidence standard, in determining whether to grant her use variance. The trial court determined as follows:

Ms. Cotton's suggestion that the only standard of proof required of her pursuant to Ohio Rev.Code § 2506.08 is that of the preponderance of substantial, reliable and probative evidence on the whole record is misplaced. R.C. § 2506.08 sets forth the standard for a court of common pleas to determine if an order, adjudication or decision from an administrative officer or agency on appeal is unconstitutional, illegal, arbitrary, capricious, unreasonable, or **unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.** (emphasis added.)

R.C.G.O. § 150.120.10 sets forth the standard of proof an applicant must satisfy in order for the BZA to grant a use variance. It is by a clear and convincing evidence standard. Thus, the BZA did not apply the wrong standard in holding Ms. Cotton to the burden of supporting her request by clear and convincing evidence.

{¶ 6} Finally, Walsh-Cotton asserted to the trial court that the BZA's decision denying the use variance was not supported by the preponderance of substantial, reliable and probative evidence on the whole record. The trial court noted that the BZA determined that Walsh-Cotton satisfied the requirements for a use variance set forth in R.C.G.O. § 150.120.10(D)(2)(a)(ii)-(v). It further noted that the board debated whether or not Walsh-Cotton satisfied the requirement in R.C.G.O § 150.120.10(D)(2)(a)(i), namely whether or not her variance request stemmed from a condition that is unique to her property and not ordinarily found in the same zone or district. The court concluded that "the BZA's decision to deny Ms. Cotton's request for a use variance was supported by a preponderance

of reliable, probative and substantial evidence."

{¶ 7}    Walsh-Cotton asserts three assignments of error herein.   For ease of analysis, we will consider her second assigned error first.   It is as follows:

THE COURT OF COMMON PLEAS ERRED BY NOT FINDING THAT THE "DECISION, FINAL ORDER AND ENTRY" OF JULY 23, 2012 WAS ILLEGAL BECAUSE A HEARING ON SAID REQUEST FOR A USE VARIANCE WAS NOT PROPERLY ADVERTISED AS REQUIRED BY CITY OF DAYTON ORDINANCES.

{¶ 8}    According to Walsh-Cotton, the "notice of hearing only indicated that there would be a hearing on the request for a set-back variance, not the use variance.   Thus, Appellant could not adequately prepare for the hearing."

{¶ 9}    As this Court has previously noted:

Administrative appeals to the court of common pleas are governed by R.C. Chapter 2506. In an appeal of an administrative order or decision under this chapter, the trial court is authorized to reverse, vacate, or modify the administrative order if the court finds the decision is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence."   R.C. 2506.04; *Parisi v. City of Dayton*, Montgomery App. No. 20045, 2004-Ohio-2739, ¶ 11. Because the trial court must determine whether the decision is supported "by the preponderance of substantial, reliable, and probative evidence," R.C. 2506.04 grants the trial court "extensive power" to weigh the evidence. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio

St.3d 142, 147, 735 N.E.2d 433, 2000-Ohio-493; *Smith v. Granville Twp. Board of Trustees*, 81 Ohio St.3d 608, 612, 693 N.E.2d 219, 1998-Ohio-340.

* * *

The standard of review to be applied by an appellate court is "more limited in scope." *Henley*, 90 Ohio St.3d at 147, 735 N.E.2d 433, citing *Kisil*, 12 Ohio St.3d at 34, 465 N.E.2d 848. Under R.C. 2506.04, the court of appeals does not have the same extensive power to weigh the evidence as is granted to the common pleas court. *Id*. The appellate court's inquiry is limited to questions of law, including whether the trial court abused its discretion. Id. at 147-48, 465 N.E.2d 848. "Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Henley*, 90 Ohio St.3d at 147, 735 N.E.2d 433, quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264. *Baker v. Mad River Twp. Bd. of Zoning Appeals*, 2d Dist. Champaign No. 2008 CA 16, 2009-Ohio-3121, ¶ 45, 47.

{¶ 10} R.C.G.O. §150.120.10(C) provides: "According to the procedures established for appeal in sub-sections 152.120.3 through 150.120.9, the BZA shall hold a public hearing and give notice of the same." R.C.G.O. § 150.120.4 provides: "The Board of Zoning Appeals shall provide notice of public hearings pursuant to the following: * * * (C) The notice of such hearings shall state the time, place, date, and subject of the hearing."

{¶ 11} We agree, as the trial court determined, that Walsh-Cotton received

appropriate notice of the hearing regarding her application for both the use and area variances.   The notice, as the language the trial court emphasized reflects, includes both the use variance and the "side setback," and it further indicates the "Proposed use," namely to "*establish* a massage studio in an existing 120 square-foot accessory building." (Emphasis added).   There being no abuse of discretion, Walsh-Cotton's second assigned error is overruled.

{¶ 12} We will next consider Walsh-Cotton's first and third assigned errors together.   They are as follows:

THE COURT OF COMMON PLEAS ERRED BY NOT FINDING THAT THE "DECISION, FINAL ORDER AND ENTRY" OF JULY 23, 2012, OF THE BOARD OF ZONING APPEALS, WHICH DID NOT GRANT THE USE VARIANCE FOR THE PROPOSED USE OF A HOME OCCUPATION IN AN ACCESSORY BUILDING, WAS ILLEGAL AND/OR ARBITRARY BECAUSE THE BOARD OF ZONING APPEALS VOTED 3-1 AGAINST A MOTION RECOMMENDING THAT THE REQUEST FOR A USE VARIANCE BE DENIED AND, DESPITE THIS, THE BOARD OF ZONING APPEALS IN NOT GRANTING THE USE VARIANCE DID DENY THE USE VARIANCE.

And,

THE COURT OF COMMON PLEAS ERRED BY NOT FINDING THAT THE "DECISION, FINAL ORDER AND ENTRY" OF JULY 23, 2012, OF THE BOARD OF ZONING APPEALS IN DENYING THE USE

VARIANCE WAS UNSUPPORTED BY THE PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE ON THE WHOLE RECORD.

**{¶ 13}** According to Walsh-Cotton, "regardless of their intent, the BZA still was in violation of R.C. 2506.08 and by issuing a decision that was contrary to the vote is illegal and contrary to law (sic). The board members clearly voted on a motion to disapprove the variance, and any written decision contrary to that vote is contrary to law and serves an injustice upon Appellant." She asserts that the "decision in this case in finding that the Appellant failed to prove that her property was unique and not ordinarily found in the same zone or district was contrary to the evidence in the record." Walsh-Cotton asserts that the transcript of the hearing reflects that the board members determined that her "property has the unique qualities necessary to allow for the use and set back variances requested in this case."

**{¶ 14}** As the Supreme Court of Ohio previously noted: "A variance is intended to permit amelioration of strict compliance of the zoning ordinance in individual cases. It is designed to afford protection and relief against unjust invasions of private property rights and to provide a flexible procedure for the protection of constitutional rights. * * * ." *Consolidated Management, Inc. v. City of Cleveland*, 6 Ohio St.3d 238, 240, 452 N.E.2d 1287 (1983). Walsh-Cotton's request for a use variance was subject to consideration pursuant to R.C.G.O. § 150.120.10(D)(2), which provides in relevant part:

> In order to grant a use variance, the BZA shall determine that strict compliance with the terms of this Code will result in an unnecessary hardship

to the applicant.  The applicant must demonstrate such a hardship by clear and convincing evidence that <u>all</u> of the criteria in Sub-section (a) are satisfied.

* * *

(a) The applicant <u>shall</u> demonstrate hardship with the following:

(i) The variance requested stems from a condition that is unique to the property at issue and not ordinarily found in the same zone or district.

We note that the Supreme Court of Ohio has determined that the "mere fact that one's property can be put to a more profitable use does not, in itself, establish an unnecessary hardship where less profitable alternatives are available within the zoning classification." *Consolidated Management, Inc. v. City of Cleveland*, 6 Ohio St.3d 238, 452 N.E.2d 1287 (1983), at syllabus.  Further, applicants cannot obtain a variance based upon undue hardship where the applicant purchased the property with knowledge of the zoning restrictions.  *See*, *id*.

{¶ 15}  The following exchange occurred at the hearing:

MR. CIANI: Mr. Smothers, could we see the standards again for a use variance?  I think it would be helpful for us to review them.  And there are five total standards for a use variance; is that correct?

MR. ISON: It's now one through five, yes.

MR. BRACHER: * * * And they all have to be satisfied?

MR. ISON: Yes, exactly.

MR. CROFT: By a clear and convincing evidence.

* * *

MR. CIANI: * * * I have the duty and responsibility to discuss use variances do put a strong burden on the applicant, and so for that reason I ask that we take a look at these individually and as we deliberate, feel free to comment on any one of the standards whether you think that there has been evidence produced that would substantiate or fulfill the requirement of the standard, or whether the evidence is contrary to the expectations here.

Why don't we go through them one at a time? The variance stems from a condition that is unique to the property at issue and not ordinarily found in the same zoned district.

MR. EVANS: This kind of easement, two accessory structures on that property, you can easily make a case that that's a unique, if you're talking about at Deweese, where there is you know, five-thousand square foot, but we're talking about a very tight property and that would certainly be unique that there are two accessory structures on there.

MR. CIANI: How do others feel about uniqueness?

MR.BRACHER: But does that particular uniqueness create a hardship for the owner? * * *

 * * *

MR. CIANI: So you have some doubt about this - -

MR. BRACHER: Yeah, I have some difficulty with number one.

* * *

MR. BRACHER: Yeah, I'm a little, I'm still a little uncomfortable

with number one.   I don't know about anybody else.

MR. EVANS: I think we've mentioned before that having an accessory building and a garage makes the property unique.   But unique to the degree that the property owner deserves relief, that's the question.   (Inaudible).   So I think this one is the potential show stopper, either we can buy into the satisfaction of the standard or not.

MR. CIANI: It seems we're having trouble getting over this one. * * *
* * *

MR. BRACHER: There can be other properties that have a garden shed of some kind, as well as the garage.   It seems to me - -

MR. CIANI: Unique does mean one of a kind.

MR. BRACHER:    Yes, it does.

MR. CIANI: Not unusual, but a one and only.   At least - -

MR. BRACHER: Yeah.

MR. CIANI: By dictionary, strictly - -

* * *

MR. BRACHER: * * * I move to determine that there is not a preponderance of reliable, probative and substantial evidence to make the specified findings required under RCGO 150.120.10, D2, and deny the application as for area variances.

MR. ISON: For use variance.

MR. BRACHER: For use variance, thank you.

MR. CIANI: Do you wish to cite Paragraph 1?

MR. BRACHER: And I would cite Paragraph 1, yes.

MR. CIANI: Is there a second to that motion?

MS. GRAHAM: I'll second it.

MR. CIANI: Second by Ms. Graham.   Will you poll the Board, please?

MR. ISON: Mr. Evans.

MR. EVANS: No.

MR. ISON: Ms.   Graham.

MS. GRAHAM: Yes.

MR. ISON: Mr. Bracher.

MR. BRACHER: No.

MR. ISON: And Mr. Ciani.

MR. CIANI: No.

MR. ISON: So the use variance is denied by the 3-2 vote.

MR. CIANI: There are only four of us here.   3-1.

MR. ISON: Oh, I'm sorry, 3-1.   I'm sorry.   That is all we have.

{¶ 16}    The written decision of the BZA provides in part:

After additional deliberation, the Board did not find that strict compliance with Zoning Code, would result in unnecessary hardship to the Applicant. Much of the Board's discussion focused on an inability to find that the Applicant had demonstrated that the variance, that is, the allowance of a home occupation in an accessory building which is prohibited pursuant to City of Dayton Revised Code

of General Ordinances § 150.440(B)(6), stems from a condition that is unique to the property at issue and not ordinarily found in the same zone or district (R.C.G.O. 150.120.10(D)(2)(a)(i).

{¶ 17}  We initially note that the trial court indicated that Mr. Ison voted "no" on the use variance, which is inaccurate.  Mr. Ison is the board secretary and not a voting member of the board.  This mischaracterization of the record, however, does not affect the outcome herein. While Walsh-Cotton contends that the BZA determined that her property is unique, based upon the initial comments of Mr. Evans above, we note that Mr. Evans voted with the majority regarding the use variance, and that the above exchange suggests that the majority found Walsh-Cotton's property to be unusual but not unique. We agree with the trial court that while the BZA "technically" voted against disapproving the use variance, Mr. Ison clearly expressed the board members' intention at the hearing to deny the use variance at the conclusion of the 3-1 vote.  Further, the BZA expressly declined to find that strict compliance with the zoning code will result in an unnecessary hardship to Walsh-Cotton, as required by R.C.G.O. 150.120.10(D)(2), before a use variance can be granted.  In other words, there is no discrepancy between the BZA's intent and its written decision.  We conclude that the trial court correctly affirmed the BZA's decision that Walsh-Cotton failed to meet the requirement of R.C.G.O. § 150.120.10(D)(2)(a)(i) with clear and convincing evidence.  Walsh-Cotton's first and third assigned errors are overruled.

{¶ 18}  Having overruled all of Walsh-Cotton's assigned errors, the judgment of the trial court is affirmed.

. . . . . . . . . .

[Cite as *Oregon Place Assn. v. Walsh-Cotton*, 2013-Ohio-5461.]
FAIN, P.J. and WELBAUM, J., concur.

Copies mailed to:

Pamela L. Pinchot
John C. Musto
Jonathan F. Hung
Hon. Michael W. Krumholtz